**Mary Labbate–D'ALAURO, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**GC SERVICES LIMITED PARTNERSHIP, Defendant.**

No. CV 95–1901.

United States District Court, E.D. New York.

Sept. 30, 1996.

tices was sent to approximately 7,500 individuals within New York State. The complaint alleges that the defendant engaged in false and deceptive practices in the attempt to collect alleged consumer debts. Presently before the Court is the plaintiff's motion for class certification.

## I. BACKGROUND

### A. The parties.

According to the complaint, Labbate–D'Alauro is a resident of New York. GC is identified as a limited partnership doing business in the state of Texas engaged in the business of debt collection for various business entities. GC does not dispute that it mailed debt collection letters to Labbate–D'Alauro. It appears, based on the parties' statements in their motion papers, that identical notices were forwarded to an estimated 7,500 people within New York State during the period from May 10, 1994 through May 10, 1995.

### B. The defendant's debt collection procedures.

According to GC, it employs both standardized form letters and telephone calls in its efforts to collect debts owed to its clients. GC offers to its clients a selection of debt collection letters from which a series of mailings is chosen by the client and sent to the client's debtors. The series of mailings varies depending on the client. In addition, some debtors receive telephone calls from GC requesting payment. Typically, a combination of letters and telephone calls is employed by GC in an effort to collect debts.

### C. The complaint.

On May 10, 1995, the named plaintiff filed the complaint commencing this action to recover for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. Specifically, the plaintiff alleges that the defendant: (1) used simulated telegrams that tended to deceive and mislead debtors into a false sense of urgency regarding their alleged debts, in violation of 15 U.S.C. § 1692e; (2) failed to disclose in all communi-

---

Robert L. Arleo, Huntington, NY, O. Randolph Bragg, Chicago, IL, for Plaintiff.

Hatter Donovan & McFaul, by Thomas J. Donovan, Minola, NY, for Defendant.

*MEMORANDUM DECISION and ORDER*

SPATT, District Judge.

This is a case brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et. seq. ("FDCPA") by the named plaintiff, Mary Labbate–D'Alauro, ("Labbate–D'Alauro") on behalf of herself and others similarly situated against the defendant GC Services Limited Partnership ("GC").

The complaint, filed on May 10, 1995, alleges that Labbate–D'Alauro received at least two debt collection notices from GC that violate provisions of the FDCPA. It is estimated by the parties that each of these no-

cations that defendant was attempting to collect a debt and that any information obtained would be used for that purpose, as required by 15 U.S.C. § 1692e(11); (3) engaged in conduct the natural consequence of which was to harass, oppress and abuse debtors in connection with the collection of an alleged debt, in violation of 15 U.S.C. § 1692d; and, (4) used false, deceptive and misleading representations and collection means, in violation of 15 U.S.C. § 1692e.

Labbate–D'Alauro now moves for class certification pursuant to Fed.R.Civ.P. 23, and proposes the following class:

> All persons with addresses within New York State to whom GC Services sent a communication or communications in the form of the May 10, 1995 and/or May 31, 1995 collection notices sent to Mary Labbate–D'Alauro in an attempt to collect a debt incurred for person, family, or household purposes, as reflected by defendant's records, on or after May 10, 1994.

## II. DISCUSSION

### A. The standard guiding Rule 23 motions.

Federal Rule of Civil Procedure 23, governing class certification, specifies that:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Once these criteria have been satisfied, a class will be certified if it meets one of the following additional conditions imposed by Fed.R.Civ.P. 23(b): (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions predominate over the individual questions and a class action is superior to other methods of bringing the suit.

GC apparently does not dispute the plaintiff's contention that "the class is so numerous that joinder of all members is impracticable" and, therefore, the numerosity requirement of Fed.R.Civ.P. 23(a)(1) is met. Rather, the defendant argues, that should a class be certified, it should be national, rather than regional, in scope. GC also challenges the plaintiff's proposal with regard to each of the remaining criteria. The Court will examine each of the remaining criteria in turn.

Before beginning the analysis, however, the Court recognizes that on a motion for class certification, in which it is the plaintiff's burden to demonstrate compliance with Rule 23's requirements, the Court should accept as true the plaintiff's allegations concerning the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974) (Rule 23 does not "give a court authority to conduct a preliminary inquiry into the merits of a suit to determine whether it may be maintained as a class action"); *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 87–88 n. 1 (E.D.N.Y.1989). However, the Court's determination of class certification motion may involve some considerations related to the factual and legal issues that comprise the plaintiff's cause of action. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). Further, Rule 23 should be given "broad, rather than restrictive, interpretation" by the Court, *Adames,* 133 F.R.D. at 88, "to favor maintenance of class actions." *King v. Kansas City Southern Indus.,* 519 F.2d 20, 26 (7th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir.1968)). "It is often proper to view the class action liberally at the early stages of the litigation since the class can always be modified or divided as issues are later refined for trials." *Adames,* 133 F.R.D. at 88 (citing *Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir.1984)). The Second Circuit has liberally construed Rule 23. *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 179 (2d Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991) (*citing Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969)). Trial courts have broad

discretion in determining whether to certify a class. *See City of New York v. Int'l Pipe & Ceramics Corp.*, 410 F.2d 295, 300 (2d Cir. 1969). It is also a prerequisite that a class be so defined as to permit a judge to ascertain whether an individual is a member. *Green*, 406 F.2d at 298.

The plaintiff's class is defined as:

All persons with addresses within New York State to whom GC Services sent a communication or communications in the form of the May 10, 1995 and/or May 31, 1995 collection notices sent to Mary Labbate–D'Alauro in an attempt to collect a debt incurred for person, family, or household purposes, as reflected by defendant's records, on or after May 10, 1994.

It is within this framework that the Court addresses the present motion to certify this action as a class action.

## B. *The requirements of Fed.R.Civ.P. 23(a)*

### 1. *numerosity; Rule 23(a)(1)*

As stated above, there appears to be no dispute that the requirement of Fed.R.Civ.P. 23(a), numerosity of the class, has been met by the proposed plaintiff class. The defendant contends, however, that if the class is certified, its scope should be national, rather than restricted to New York residents who received similar debt collection letters. GC relies on the reasoning set forth in *Mace v. Van Ru Credit Corp.*, 1995 WL 549088 (N.D.Ill. Sept. 11, 1995), where the court declined to certify the proposed class for other reasons, but noted that had certification been appropriate, a national class, not a state-wide class, would have been the proper vehicle for the action. *Id.* at *14.

In *Mace*, the plaintiff alleged a violation of the FDCPA and sought class certification. The court analogized the FDCPA to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 (1994) et seq. TILA, like the FDCPA, limits defendant liability in class actions. 15 U.S.C. § 1640(a)(2)(B) (1994). Originally, TILA and the FDCPA contained identical language limiting damage recovery. Unlike the FDCPA, however, TILA was subsequently amended in 1980 to make the monetary limitation applicable per series of class actions, rather than per individual class action. The *Mace* court stated the view that the congressional intent was to cap FDCPA damages in the same manner as did the 1980 TILA amendment. *Mace*, 1995 WL 549088, at *15.

■ This Court declines to apply the reasoning of the *Mace* court, and instead agrees with the determinations in cases such as *Avila v. Van Ru Credit Corp.*, 1995 WL 41425 (N.D.Ill. Jan. 31, 1995), where the court certified a class comprised solely of Connecticut residents notwithstanding the fact that a national class could have been certified. *Id.* at *2. As the *Avila* court pointed out, while a class may be national in scope, the plain meaning of the FDCPA does not require that the largest potential class be certified. *Id.* at *3. Further, had Congress intended to limit liability under the FDCPA as it did under the TILA, it could have achieved this purpose by amending the FDCPA as it did the TILA. This it did not do. The Court agrees with the view that an FDCPA class need not include all potential plaintiffs and may be limited geographically consistent with the legislative intent of the FDCPA.

As the defendant notes, certification of a class based on state residency has the potential of exposing a defendant to substantial damage awards if it is subjected to suit in each of the fifty states. However, as the plaintiff notes, the one-year statute of limitations applicable to FDCPA claims limits the liability of an FDCPA defendant who takes prompt, corrective measures to prevent further FDCPA violations. The Court finds that the plain meaning of the FDCPA does not prohibit the certification of a class in which less than all potential plaintiffs are included.

Accordingly, the Court finds that the numerosity requirement has been met by the plaintiff.

### 2. *Common questions of law or fact; Rule 23(a)(2)*

■ The second requirement for class certification is that the plaintiff show that the claims of the class members share common

questions of law or fact. Fed.R.Civ.P. 23(a)(2). "Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that *all* questions of law or fact raised be common." *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 18 (W.D.N.Y.1995), *citing, Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981) (emphasis in original); 1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.10 (3d ed. 1992). "The ... standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need be only a single issue common to all members of the class." Newberg, *supra*, at § 3.10; *see Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153–54 (2d Cir.1983) (common question of free speech overrode individual questions concerning each class member). The critical inquiry is whether the common questions are at the "core" of the cause of action alleged. *See Halford,* 161 F.R.D. at 18. In cases where FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class. *See, e.g., Avila v. Van Ru Credit Corp.*, 1995 WL 41425, at *11 (certifying class where all members received at least one letter in common); *Colbert v. Trans Union Corp.*, 1995 WL 20821, at *2 (E.D.Pa. Jan. 12, 1995) (certifying class where all members received similar debt collection letters). The claims of individual class members do not have to match precisely. *Adames,* 133 F.R.D. at 90. Further, where the question of law involves "standardized conduct of the defendant ... [to the plaintiff], a common nucleus of operative fact is typically presented and the commonality requirement ... is usually met." *See Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984).

The plaintiff alleges that from May 10, 1994 through May 10, 1994 she, and approximately 7,500 other New York residents, received two debt collection letters from defendant that were harassing, oppressive, and/or abusive in violation of 15 U.S.C. § 1692d; the letters falsely simulated an official document in violation of 15 U.S.C. § 1692e(9) and (10);

the letters created a false sense of urgency, in violation 15 U.S.C. § 1692e; and, finally, neither letter contained, on its face, the debt collection warning required by § 1692e(11). The defendant contends that the commonality requirement is not met because some members of the proposed class received only form letters while others received telephone calls as well. Accepting the plaintiff's allegations as true, however, this Court finds that there are common questions of law or fact present that warrant certification of the proposed class.

The defendant's assertion that during the debt collection process some members of the proposed class received additional debt collection letters and telephone calls not common to all proposed class members, does not defeat the commonality requirement because the claims of individual class members do not have to match precisely. *See Colbert,* 1995 WL 20821, at *2; *Adames,* 133 F.R.D. at 90. Because all of the proposed class members did receive each of the two identical letters at issue in this case, the allegations in the complaint are common to all proposed class members. Standardized conduct is present here and, as stated above, such conduct weighs in favor of a finding that the commonality requirement is met.

The Court finds that a common question of law or fact is presented and, therefore, that the plaintiff has met the commonality requirement imposed by Fed.R.Civ.P. 23(a)(2).

### 3. Typicality; Rule 23(a)(3)

Rule 23(a)(3), requiring that the named plaintiff's claim be typical of the class, is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir.1993), *citing In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992); *In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 324 (E.D.N.Y.1982). When the same "unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns

which underlie individual claims." 1 Newberg, *supra*, at § 3.13 (3d ed. 1992); *see also Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y.1981).

The Court finds that the plaintiff's claims satisfy the typicality requirement of Rule 23(a). All of the prospective class members were allegedly harassed, oppressed, and/or abused by letters that allegedly falsely simulated an official document and created a false sense of urgency. It is alleged that none of the letters described contained, on its face, the required debt collection warning. The Court notes that the defendant disputes the plaintiff's allegation regarding the adequacy of the required notice. However, the Court finds that the alleged unlawful conduct was directed at the named plaintiff and class members alike, irrespective of minor variations, and as such are sufficiently typical of the class to justify certification.

### 4. *Adequacy of representation; Rule 23(a)(4)*

**[12, 13]** Under Rule 23(a)(4), adequacy of representation is measured by two standards. "First, class counsel must be 'qualified, experienced and generally' able to conduct the litigation." *See Halford,* 161 F.R.D. at 19. Second, the class members must not have interests that are 'antagonistic' to one another." *Id.* at 19, *citing, Drexel,* 960 F.2d at 291; *see also County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1413 (E.D.N.Y.1989) aff'd, 907 F.2d 1295 (2d Cir. 1990).

The first prong of the analysis is clearly met by the plaintiff. The plaintiff's counsel Robert L. Arleo, Esq. annexes an affidavit listing more than fifty actions in which he has represented plaintiffs in actions brought under the FDCPA. This factor supports the plaintiff's position that counsel will adequately represent the class. *Avila,* 1995 WL 41425, at *9.

■■■ GC challenges the plaintiff's application with regard to the second prong. According to GC, Labbate–D'Alauro is unable to adequately represent the class because she will be subject to unique defenses as a "professional plaintiff." Thus, the defendant

contends, the plaintiff will be unable to vigorously represent the class due to the conflict between her interests in defending against the unique defenses and the interests of the class. In addition, GC claims that, if successful, plaintiff could obtain the same recovery whether the suit is brought individually or as a class and, therefore, it "makes no sense for her to prosecute vigorously on behalf of the class when the result to her is the same." *See* Defendant's Memorandum in Opposition, at 18.

The Court does not agree with either of the defendant's contentions with regard to the second prong. GC's claim that plaintiff is a "professional plaintiff" is unsupported by any documents before the Court. The plaintiff states that she has never been a plaintiff in an FDCPA claim prior to this suit, although she appears to have acted as guardian for a minor plaintiff in a suit subsequently dismissed. The defendant does not identify any prior law suits initiated by plaintiff under the FDCPA, and therefore the Court will not deny certification based on "speculative suggestion of potential conflicts" with regard to unique defenses. *Gruby v. Brady,* 838 F.Supp. 820, 827 (S.D.N.Y. 1993) (citing *Breedlove v. Tele–Trip Co.,* No. 91 C 5702, 1993 WL 284327, at *7 (N.D.Ill. July 26, 1993)). As the district court recognized in a related footnote:

> Even if a conflict was found to exist, the Court need not necessarily deny class certification.
>
> A court may certify a class where the unnamed class plaintiffs, whose interests are antagonistic to other members of the class, are adequately represented by defendants [sic] in a class action.... [Moreover], the court can certify the class conditionally to provide time for disagreement among class members to become clear, or the court can decertify a class if it becomes apparent that the representation is inadequate.

*Id.* at 827 n. 8, (citing *Breedlove,* 1993 WL 284327 at *7–*8).

While the plaintiff's financial recovery is potentially the same whether the suit is brought individually or as a class, nothing in Rule 23 or the case law indicates that this

circumstance should defeat the certification of a class. Furthermore, support for this factual scenario may be found to the contrary. *See Avila,* 1995 WL 41425. Accordingly, the Court finds that the named plaintiff is not sufficiently antagonistic to defeat class certification under Rule 23(a)(4).

## C. *The requirements of Rule 23(b)*

■ As discussed above, once the requirements of Rule 23(a) are satisfied, the plaintiff must then comply with one of the following additional conditions provided for in Fed.R.Civ.P. 23(b): (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions of law or fact predominate over individual questions. It is plaintiff's position that the third condition, imposed by Rule 23(b)(3) is met. Because only one of the three conditions need be satisfied, the Court will address only that requirement.

Rule 23(b)(3) provides that a class should be certified where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

■ Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist. *Halverson v. Convenient Food Mart, Inc.,* 69 F.R.D. 331, 334 (N.D.Ill. 1974). Specifically, cases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action. *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1164 (7th Cir.1974) (finding class action to be the appropriate method to resolve a dispute under TILA where the defendant used a standardized form installment retail contract). Further, several FDCPA claims have received class certification based upon a defendant's use of standardized forms. *See, e.g., Avila,* 1995 WL 41425; *Colbert,* 1995 WL 20821;

*Carr v. Trans Union Corp.,* 1995 WL 20865 (E.D.Pa.1995).

In the present case, it is the use of standardized debt collection letters that have given rise to plaintiff's claim. The questions of law and fact involved in this action relate to the use of the debt collection letters admittedly mailed by defendant to the proposed class. These common questions of law and fact surrounding the contents and mailing of these letters predominate over individual issues. Accordingly, the Court finds that the plaintiff has satisfied this prong of Fed. R.Civ.P. 23(b)(3).

■ In addition to the predomination of common questions of law or fact, the class action must be the superior method to resolve the controversy to satisfy fully the requirements of Rule 23(b)(3). Class actions are the superior method for resolving controversies when the main objectives of Rule 23 are served; namely, the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications. *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 2557–58, 61 L.Ed.2d 176 (1979). The Court is required to determine the best available method for resolving the controversy in keeping with "judicial integrity, convenience and economy." *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149, 172 (W.D.Mo.1977). It is appropriate for the court to consider the "inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes,* 503 F.2d at 1165. "Class actions are often the most suitable method for resolving suits to enforce compliance with consumer protection laws because the awards in an individual case are usually too small to encourage the lone consumer to file suit." *Colbert,* 1995 WL 20821, at *3.

In the present case, the plaintiff class is comprised of consumers who are not likely to bring suit on their own. Individual recovery is estimated by the parties to be between $30.00 and $60.00, a sum not likely to encourage many individual consumers to bring suit.

For these reasons, the Court finds that a class action is the superior method for resolving the controversy. Therefore, the plaintiff has satisfied both prongs of Fed.R.Civ.P. 23(b)(3). As noted above, the plaintiff has also met each of the prerequisites to class certification outlined in Fed.R.Civ.P. 23(a). Because all of the requirements of Fed. R.Civ.P. 23 have been met, the class shall be certified as follows:

> All persons with addresses within New York State to whom GC Services sent a communication or communications in the form of the May 10, 1995 and/or May 31, 1995 collection notices sent to Mary Labbate–D'Alauro in an attempt to collect a debt incurred for person, family, or household purposes, as reflected by defendant's records, on or after May 10, 1994.

In reaching its decision, the Court is aware that it has broad discretion to determine whether a class should be certified and that public policy is in favor of class actions as a method of dispute resolution. The Court notes that the defendant asserts that its own records do not identify who received the letters at issue in this action. However, at this stage of the proceedings, it is not possible to eliminate the possibility that such information could be ascertained from other sources, such as the defendant's client's records that were supplied to GC in order to process the collection mailing.

The Court also notes that it may modify or divide the class action as the litigation progresses and more information is known about the appropriate method for bringing the suit.

### III. CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion to certify the class.

SO ORDERED.