**Johnnie L. YOUNG, Jr., et al.,**

v.

**RAY BRANDT DODGE, INC.**

Nos. CIV. A. 96–1560, 97–0187, 97–2001, 97–2316 and 97–2624.

United States District Court, E.D. Louisiana.

Nov. 5, 1997.

---

Harold Menton Wheelahan, III, New Orleans, LA, John Gregory Odom, Stuart E. DesRoches, Ladson, Odom & DesRoches, New Orleans, LA, Dawn Adams Wheelahan, Dawn Adams Wheelahan, Attorney at Law, New Orleans, LA, for Plaintiff Johnnie L. Young, Jr.

Dennis J. Phayer, Alan A. Zaunbrecher, Todd L. Lacoste, Law Office of Alan A. Zaunbrecher, Metairie, LA, Jjames Thomas Grevemberg, Law Offices of Robert E. Birtel, Metairie, LA, for Defendant Ray Brandt Dodge, Inc.

Joseph Keith Hardie, Jr., J. Keith Hardie, Jr., Attorney at Law, New Orleans, LA, for Plaintiff Kerrie Stewart.

John M. Wilson, George Denegre, Jr., Cheryl Lea Martin, Liskow & Lewis, New Orleans, LA, W. Michael Atchison, Rik S. Tozzi, Starnes & Atchison, Birmingham, AL, for Defendant Protective Life Ins. Co.

Robert Emmett Kerrigan, Jr., Duris Lee Holmes, Deutsch, Kerrigan & Stiles, New Orleans, LA, for Defendant Banner of N O, Inc.

Roy M. D'Aquila, DeMartini, LeBlanc, D'Aquila & Volk, Kenner, LA, Robert N. Habans, Jr., Dwight Leblanc Acomb, Habans, Bologna & Carriere, New Orelans, LA, for Defendant Lamarque Ford, Inc.

Charles R. Penot, Jr., Anthony J. Rollo, Jr., McGlinchey, Stafford & Lang, New Orleans, LA, Lance B. Williams, Pulaski, Gieger & Laborde, New Orleans, LA, Scott D. Daniel, Greer, Herz & Adams, Galveston, TX, for Defendant American Nat. Ins.

H. Alston Johnson, Elizabeth Jane Hastings Sherman, Richard E. Matheny, Darrell James Loup, Margaret Eleanor Kozan, Phelps, Dunbar, L.L.P., Baton Rouge, LA, for Defendant Louisiana Dealer Services Ins.

### ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is plaintiffs' Motion for Class Certification under Rule 23(b)(3) of a class composed of:

> persons currently residing in Louisiana who purchased and financed insurance, but not including liability insurance, from defendants, Louisiana Dealer Services Insurance Company, Inc., First Assurance Life of America, American National Insurance Company, and Protective Life Insurance Company, in connection with retail installment contracts which financed the purchase of vehicles from vehicle dealers in Louisiana.

The plaintiffs also seek to certify a subclass compromised of:

> persons, included within the above described class, who purchased insurance described as credit life insurance in connection with retail installment contracts which financed the purchase of vehicles from vehicle dealers in Louisiana.

Plaintiffs invoke the familiar mantra of RULE 23(b)(3): that common issues pre-

dominate, and that one class action is superior to other available methods for resolving this controversy. Because the Court is not persuaded, the motion is DENIED.

## I.  *Background*

This motion is the plaintiffs' latest of varying attempts at class certification in these consolidated cases. The plaintiffs seek to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure, asserting fraud-based claims arising out of an alleged conspiracy involving defendants' violation of the federal RICO statute and Louisiana fraud law. They have switched visions of the proposed class models several times to gain Court acceptance.

Previously, the plaintiffs wanted to certify a class under Rule 23(b)(1)(A) (inconsistent adjudications) and Rule 23(b)(1)(B) (limited fund). However, that attempt only included three of these consolidated cases. The Court denied the motion, but without prejudice to seek certification under Rule 23(b)(1)(B) because of prematurity. Certification proceedings based on the limited fund theory in the first three cases were then scheduled for September 24, 1997. Before the hearing date, however, the plaintiffs filed two additional lawsuits which were then consolidated

by the Court. Plaintiffs' two new suits tended to produce more heat than light, and the Court continued the class certification hearing until October 22, 1997, so that the newly-added defendants would have time to respond. Faced with a tactical dilemma, the plaintiffs then tried to sever the newly added defendants, which was denied by the Court. Their vision of the class then changed still again: The plaintiffs now seek certification of a class of plaintiffs only under Rule 23(b)(3).[1]

## II.  *Law and Application*

This case, and the effort to squeeze it into a Rule 23 class action is about one simple issue: Have the defendants fraudulently sold to plaintiffs, who financed automobile purchases, insurance in the event of death or disability at inflated premium prices? The issue is a serious one, and the answer may well be yes. It is common to all plaintiffs (or the estate of a plaintiff), but for a variety of other reasons, the answer may also be no. And that is where this Court's resolution of the Rule 23 issues must begin.

Parties seeking class certification must satisfy all the Rule 23(a) prerequisites and at least one of the requirements of Rule 23(b).[2] Because plaintiffs fail to satisfy the require-

---

1. The Court noted on October 9, 1997, that because the plaintiffs voluntarily waived certification under Rule (b)(1)(B), it would only hear the plaintiffs' motion for certification under Rule 23(b)(3). Therefore, the plaintiffs' motion to certify cases 96–1560, 97–0187, and 97–2001 under Rule 23(b)(1)(B) is denied as moot. The motion to strike expert affidavit, filed by Louisiana Dealer Services and First Assurance Life of America, is also denied as moot. The expert testimony was for class certification under Rule 23(b)(1)(B), which has been withdrawn.

2. **Rule 23.  Class Actions**

   **(b) Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   (1) the prosecution of separate actions by or against individual members of the class would create a risk of
   (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
   (B) adjudications with respect to individual members of the class which would as a prac-

   tical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
   (3) the court finds that the questions of law common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

ments of Rule 23(b)(3), the Court need not decide whether plaintiffs satisfy Rule 23(a).

### A. *Rule 23(b)(3) Requirements*

#### 1. Predominance

■ This Court ought not and cannot certify a class under Rule 23(b)(3) if individual questions of fact predominate over questions that are common to the class. *Matter of Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1297 (7th Cir.), *cert. denied,* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995); *In re Masonite Corp.,* 170 F.R.D. 417 (E.D.La. 1997); *Buford v. H & R Block. Inc.,* 168 F.R.D. 340 (S.D.Ga.1996), aff'd. sub nom, *Jones v. H & R Block Tax Services,* 117 F.3d 1433 (11th Cir.1997); See also *Ford v. Murphy Oil,* No. 96–2913, p. 10–12 (La. 09/09/97), 703 So.2d 542, 548–49 (1997). The Fifth Circuit has clearly instructed that when plaintiff conduct individualizes each case, class certification will be inappropriate. *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996); *Buford,* 168 F.R.D. at 355. Here, the issues that predominate are largely discrete and personal. Because the underlying claims are all based on fraud, an introverted reliance as to each aggrieved person, each credit purchaser, must be shown. See *Williams v. WMX Technologies,* 112 F.3d 175, 177 (5th Cir.1997); *Andrews v. AT&T,* 95 F.3d 1014 (11th Cir.1996); *Mack v. GMAC,* 169 F.R.D. 671 (M.D.Ala.1996).[3] The simple doctrine the case literature supports is that fraud cases are counterintuitive to Rule 23(b)(3) even if fraud is common to all cases. "[A] fraud class action" the Fifth Circuit has written, "cannot be certified when individual reliance will be an issue." *Castano,* 84 F.3d at 744 (citing *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880 (5th Cir.1973)).

The plaintiffs would disguise a duck as a swan. They urge that this is merely a "form case" and that the Court need only look at the insurance disclosures made on the retail installment contracts that were signed by the plaintiffs. They claim that because of mate-rial omissions, proof of reliance is not necessary. The defendants correctly note that this is not just a form case and that individual reliance must necessarily be shown to prove fraud. A host of factors must be considered to prove fraud under RICO and state fraud laws. They are the very structure of the proof of these cases. These factors include: (1) the information actually given to each plaintiff; (2) the sales presentation made to each plaintiff; (3) the retail installment contract and the disclosures made on the forms; (4) whether a plaintiff read the information provided to him; (5) if the plaintiff did not read the information, as is admitted in one case, his understanding of the transaction; (6) representations made to and by the plaintiff; (7) the questions asked by each plaintiff at the time of the sale and the answers provided; (8) the extent to which the plaintiff relied on the information given by the defendant; (9) the plaintiff's motivation for purchasing the insurance (which differs as to at least one case); (10) whether the plaintiff would, or could have, bought the policy for a lower price if he had known about the commission paid to the dealers.

The Court agrees with the defendants. It betrays common sense to presume that the plaintiffs were all mute automatons who were told nothing, participated in no financing discussions, had false papers thrust before them, and unthinkingly signed them. Because individual reliance is patently an issue, this is not a case that can be determined by looking simply at the retail installment contracts the plaintiffs signed when they purchased their vehicles. Such skimpy proof would fail. No. Each plaintiff has a different set of personalized circumstances about his decision to purchase insurance. For example, Johnnie Young purchased the credit life insurance because he was worried about his health for specific and disclosed reasons. He had a family history of cancer, and at the time he purchased his van, he was not feeling well and had been passing blood in his stool.

---

**3.** In *Andrews,* plaintiffs with RICO claims based on common misrepresentations in promotional materials were denied class certification. The Eleventh Circuit held that individual issues pre-dominated because the plaintiffs would ultimate-ly have to show reliance on misrepresentations. In *Mack,* where plaintiffs asserted RICO and state law fraud claims, the court refused to certify a class because the individual reliance of each plaintiff was an issue.

He admits that because of his medical condition he probably would still have bought the credit life insurance, even if he knew about the commission. So the issue of whether he was defrauded requires an individual inquiry. Carri Artigue did not purchase credit life insurance. She purchased credit disability insurance. But like Young, she does not object to the cost of the policy; she objects to the undisclosed commissions paid to the dealer. Again, the question of reliance is unqualifiedly subjective to her. Whether Ms. Artigue relied on information given to her by the dealer in question, or whether she would have purchased the insurance had she known of the commissions are questions specific to her situation. Still more follows: Kerri Stewart, who is acting on behalf of her father's estate, knows nothing of the facts surrounding her father's purchase of insurance. She was not with him when he purchased the insurance, but she claims (through counsel) that both misrepresentations and omissions were made. Once again her father's reliance on the alleged misrepresentations and omissions depends on factors which are specific to his purchase of insurance. Apparently, some people, like Mr. Young, who were concerned about health, would have purchased the insurance regardless of the commission paid to the dealers. On the other hand, others may have decided against purchasing the insurance. Whether the answer is yes or no, that central question can only be resolved on an individual basis.

Each plaintiff clearly has a specific set of circumstances surrounding his or her purchase of the insurance at issue. Questions of reliance cannot rationally be denied to exist, are wholly individual, and demand an inquiry into each specific purchase of insurance to determine if material omissions or misrepresentations were made. In fact, during oral argument, counsel's own presentation often intertwined omissions and misrepresentations.

These individual reliance issues are additionally magnified by the fact that not one of the representative plaintiffs has a claim against more than one of the defendants. Each plaintiff's claim is not only subjective but is specific to each defendant. No overlap or link among the defendants exists. Although plaintiffs are dogmatic about standardized conduct, what sales representatives told what plaintiffs varies from dealer to dealer. And there are even differences in the types of insurance purchased by the plaintiffs. For instance, Johnnie Young bought credit life and mechanical breakdown insurance, Carri Artigue did not purchase credit life insurance at all (she only bought credit disability and extended warranty insurance)

Although common generalized issues of fraud certainly exist in these cases, like the use of forms and such, the plaintiffs have not established that they predominate. In fact, the issues which do predominate involve an inquiry into the subjective circumstances about each plaintiff's decision to purchase the insurance policies in question. Thus, class certification is not appropriate.

### 2. Superiority

■ Although the plaintiffs have not satisfied the predominance requirement of Rule 23(b)(3), it also seems instructive to speak briefly to the second requirement, superiority. This requirement is cousin to the predominance requirement. One flows from the other. *Castano* speaks thusly: "An incorrect predominance finding also implicates the court's superiority analysis: The greater the number of individual issues, the less likely superiority can be established." *Castano*, 84 F.3d at 745 n. 19. When individual questions of fact predominate over common questions, the litigation becomes unmanageable and less efficient than litigation involving smaller classes, or even a series of individual suits. Therefore, class certification of cases in which individual questions predominate also fails the test of superior adjudication. *Buford*, 168 F.R.D. at 364.

■ Class treatment is simply not, on this record, superior much less better. Each plaintiff has questions that are specific to his own circumstances in purchasing the insurance in question and those questions are best resolved individually. The Court would also add that when a plaintiff's theory is novel and untested, class certification is not a superior method of adjudication. See *Ford*, at pp. 12–14, 703 So.2d at 549–50. Look again to

*Castano:* "[C]ertification of an immature tort brings with it unique problems that may consume more judicial resources than certification will save." *Castano,* 84 F.3d at 734. In this case, the plaintiffs' claims for fraudulent insurance practice in this state have never been adjudicated by any court. Thus, certifying a class under these conditions does not seem to be a superior means of adjudicating these cases. When fraud like that claimed here is so central to the grievance, it must be resolved on a case-by-case basis. It would be unseemly, and offend justice, to lump all claims of fraud together. See *Rhone–Poulenc,* 51 F.3d at 1298.

### Conclusion

Because the plaintiffs have failed to demonstrate that common issues predominate and that a class action is a superior method of adjudicating the issues, plaintiffs' motion to certify a class under Rule 23(b)(3) is DENIED, with prejudice.